THE GEORGIA RAILROAD *vs.* BEATIE *et al.*, surviving partners.

1. A railroad company transporting live stock may contract with the shipper for a consideration that the company shall be released from all liability for damages accruing to the stock, disconnected and apart from the conduct or running of the trains, as from overloading, suffocation, heat, and the like.

2. Whether a contract to release the company from damages resulting from the conduct or running of its trains would be contrary to public policy, *quaere ?*

Railroads. Damages. Negligence. Contracts. Before Judge CLARK. City Court of Atlanta. June Term, 1880.

Reported in the decision.

HENRY HILLYER, for plaintiff in error.

MYNATT & HOWELL, for defendant.

SPEER, Justice.

Beatie *et al.*, as surviving partners of Jones & Beatie, sued the Georgia Railroad and Banking Company for damages to a car-load of his stock, consisting of cattle, sheep and shoats, which they had shipped from Atlanta to Augusta over said road in April, 1879. The declaration alleged that, by the negligence of said company in suddenly and with great force starting and stopping its trains, one of said cattle was killed, many of them thrown down and against each other and the car in which they were carried, and thereby bruised, injured and damaged, to the loss of plaintiffs $500.00.

To this suit defendant below filed the general issue and also a plea setting up a written contract made by defendant with plaintiffs' firm at the time of the delivery of said stock to defendant, in which it is stipulated, among other things, "that in consideration of a reduction in the

amount of freight and a free ticket to one of the plaintiffs to accompany the stock over the road, defendant was to be liable only for such injuries as result from fraud or gross negligence." The precise terms of the contract, as set forth as a release from liability, are as follows:

"In consideration of a reduced rate in car-load quantities, the owner and shipper assume certain risks specified below. Now, in consideration of said railroad agreeing to transport the above described live stock at the reduced rate of —— dollars per car-load, and a free passage to the owner or his agent on the train with the stock, the said owner and shipper do hereby assume (and release the said railroad from) all injury, loss and damage or depreciation which the animals or either of them may suffer in consequence of their being weak, or escaping, or injuring themselves or each other, or in consequence of overloading, heat, suffocation, fright, viciousness, or of being injured by fire or the burning of any material while in the possession of the company, or from all other damages incidental to railroad transportation which shall not have been caused by the fraud or gross negligence of said railroad company."

On the pleadings and proofs thus submitted, and the charge of the court, the jury returned a verdict for the plaintiffs. Whereupon defendant made a motion for a new trial on the various grounds as set forth in the record, which was overruled by the court, and defendant excepted.

The first seven grounds in the motion not being pressed here in the argument, we will proceed to notice those on which plaintiff in error mainly relies for a reversal of the judgment below.

The eighth ground is because the court erred in charging the jury as follows: "In this case there is set up an express contract, which, as I have said to you, limits the liability of the company, but not with respect to its diligence. The diligence which the law requires is the dili-

gence which the company must exercise, and the putting in this contract of any less diligence than that, is void because contrary to law. The law being founded upon what is considered by the legislators as sound public policy of the land, and a policy that cannot be contravened, set aside or rendered nugatory by private contract.

(9.) Because the court erred in charging, "A common carrier (which this company is) is bound to extraordinary diligence. Extraordinary diligence is defined by the law to be that extreme care and caution that all very prudent and thoughtful persons use in securing and preserving their own property, but the liability of the company may be qualified or limited, but not so as to excuse them from the diligence which the law requires."

(11.) Because the court erred in charging, "The company will not be liable unless you should believe from the evidence that there was a want of diligence upon the part of defendant in the running of its trains, or in any way connected with its duties toward the stock which they were transporting."

(12.) Because the court refused to charge as requested in writing by the defendant, " If you find the contract mentioned in defendant's plea was signed by plaintiff, John Thomas, there can be no recovery in this case."

(14.) Because the court refused to give in charge the following request, in writing: " It was competent for the plaintiff and defendant to make the special contract set up by the defendant, and under that contract there can be no recovery except for fraud or gross negligence; and as the declaration makes no such charge, plaintiff cannot recover."

(18.) Because the court erred in charging, " Now, gentlemen, there is a stipulation that in case the loss or damage occurs from any one or more of these causes, the company shall not be liable, and if you believe from the evidence, that the damage alleged to have been done to this stock during that transportation from here to Augusta, was

caused by one or more of these stipulations, then the company will not be liable unless you should believe from the evidence that there was a want of diligence upon the part of the defendant in the running of its trains, or in any other way connected with its duties toward the stock which they were transporting."

We very readily recognize the common law rule of liability of common carriers so earnestly and ably presented by the counsel for defendant in error, and well understand that in cases of loss, presumptions are against them, and no excuse avails them, unless it was occasioned "by the act of God or the public enemies of the state."

We also recognize that a common carrier cannot limit his liability by publication or by entry on receipts given or tickets sold ; " but that he may make an express contract, and will then be governed thereby." All these are familiar rules, and are applicable to such articles of an inanimate nature, as were then transported, and known to the common law as objects of transportation. But in the transportation of live stock, in the case of *The. Georgia Railroad Company vs. Spears*, decided at the present term, this court said, "At common law, the only exceptions to the liability of the common carrier for losses were where they occurred by the act of God, or the public enemy. But to these have since been added cases where the goods were lost by their own decay—from an inherent infirmity or by the fault of the owner himself—and still later, from the necessity and justice of the case, another exception has been introduced in favor of the carrier of live stock, of accountability for its loss or injury, resulting from its own vicious propensities and the damages incident to its carriage from its inherent natural character, so that it now seems to be settled that a carrier of living animals as freight is a common carrier as to such freight, and liable as such with the foregoing exception. That is to say, he is liable as in other cases—as an insurer—except from the act of God, the public enemy, or of the animals

themselves, unless he has further protected himself by contract." See *Georgia Railroad and Banking Company vs. Spears*, of the present term, and authorities cited. It was also recognized in the same case that the common carrier of live stock might limit his liability by special contract, as recognized in the Code, §2068. This rule of liability of common carriers, as to live stock transported, having been thus settled in the case cited, we need not look further for any ruling or authority on this point. But the question of liability in this case does not depend upon the rule of law above, but upon the special agreement these parties have entered into limiting still further their liability. For a consideration the plaintiffs below stipulated in the transportation of this car of stock the company shall not be liable in damages on account of their being "weak,'' or "escaping," or "injuring themselves or each other," or for "overloading," "heat," "suffocation," "fright," "viciousness," "fire," or "burning of any material while in possession of the company," or "from all other damages incidental to railroad transportation, unless caused by the fraud or gross negligence of the company." The rights of the shipper and liability of the company are fixed by this contract so far as the same may be legal, and so far as the damages may be the result of any of the causes therein legally stipulated against. The court below, in its charge to the jury, recognized that under the law it was competent for the railroad company to fix and limit its liability as a common carrier of this stock by a special contract, and in charging on this contract, said to the jury, "It is therefore provided in the contract that said owner and shipper do hereby assume and release the railroad company from all injury, loss, damage or depreciation which the animals or either of them may suffer in consequence of their being weak, or escaping or injuring themselves or each other, or in consequence of overloading, heat, suffocation, fright, viciousness, or being injured by fire in the burning of any material while in possession of the

company. Now, gentlemen, there is a stipulation that in cases of loss or damage accruing from any one or more of these causes the company shall not be liable, and if you believe from the evidence that the damage alleged to have been done to this stock was caused by any one or more of these stipulations, then the company will not be liable, unless you believe from the evidence that there was a want of diligence upon the part of the defendant in the running of its train, or in any other way connected with its duties to the stock which they were transporting. But if, as I told you, their want of diligence did not contribute to this loss in the ordinary course of transportation, and the damages to this cattle occurred from any one or more of the causes stipulated in this contract, the defendant would not be liable."

It was to this charge of the court defendants below excepted, and insist that it was error.

We did not decide or intend to decide in the case of *Georgia Railroad vs. Spears*, that the company could by special contract with the shipper stipulate against any damage or injury that might result from the running of the trains, or that· would relieve them from the rule of law that imposes upon them extraordinary diligence in the running or management of their trains. Nor do we intend so to hold in this case, as it is not necessary for the decision of the question made in this record. But we did decide in the case referred to that it was competent for the common carrier in the transportation of live stock to stipulate and agree with the shipper, for a consideration, that the company should be released from all liability for damages, for any thing that might accrue to said stock so being transported, which was disconnected and apart from the conduct or running of said trains; for instance, from overloading, suffocation, heat, and casualties resulting from such causes, but that a contract of such a character would be upheld and protect the company. In other words, that they might by contract stipulate against being insurers

v 66—28

of the stock thus transported from any casualty or accident not traceable to negligence in the care, management and running of the trains, and that such a contract would relieve them from that rule of diligence in caring for said stock transported, which in its absence the law would impose.

· The court in its charge instructed the jury, "That the common carrier could not by any contract absolve itself from liability on account of the want of diligence." The court said, "the diligence which the law requires is the diligence·which the company must exercise, and the putting in this contract any less diligence than that, is void because contrary to law."

Though this may have been the rule at common law as applicable to the transportation of inanimate objects, which were alone known to that law, still in the transportation of live stock, we are satisfied on account of its peculiar nature a different rule is a necessity, and so this court held in the case heretofore quoted. In so holding, the question then is, did the court in this' case charge correctly as to this rule so recognized and laid down in the case above cited. In the charge given in this case, the court said, "That if you believe from the evidence that the damage alleged to have been done to this stock during the transportation was caused by any one or more of these stipulations provided against in the contract, then the company will not be liable, unless you should believe from the evidence that there was a want of diligence upon the part of the defendant in the running of its trains *or in any other way connected with its duties toward the stock which they were transporting.*" The last words thus quoted evidently were intended to apply the law of diligence to the taking care of this live stock outside of the running of the trains as a duty the company owed to the shipper, notwithstanding the stipulations in the contract to the contrary. And we are the more satisfied this is the proper construction intended by the court, because it is in full harmony with that portion of the same charge

in which the court says, "The carrier cannot absolve himself from liability by any contract on account of the want of diligence;" and further, "The diligence which the law requires is the diligence which the company must exercise, and the putting in this contract any less diligence than that is void because contrary to law."

We think this portion of the charge complained of, to-wit: "unless there was a want of diligence upon the part of the defendant in any of its duties in connection with said live stock which they were transporting," under the facts of this case was error, and put a burthen on the carrier that his contract with the shipper expressly relieved it from; and such was the ruling of this court on a similar question made in the case heretofore cited as decided at this term, *Georgia Railroad vs. Spears.*

The question presented by the record in these two cases involves new principles of law growing out of the transportation of this species of property, which was unknown to the common law, and it became the duty of this court to recognize in the rules they have there prescribed the peculiar character of the property to be transported, and establish a rule that would be just to the shipper and not onerous to the carrier. The immense expanse of our territory and facilities for transportation, so wonderfully increasing for this species of property, demand that rules of law such as would be reasonable and just to the shipper and carrier should be recognized and established, that may not embarrass or obstruct the commerce of the country on the one hand, or make its transportation a loss rather than a profit to the common carrier on the other. Believing then, that the court erred in holding, as he did, in his charge that, notwithstanding the special contract, the carrier would be bound by the law of diligence in and about the transportation of said stock while on board, apart from the running and management of said trains, we are constrained to reverse the judgment below refusing a new trial.

Judgment reversed.